## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JERRINE HEARRON, | ) |
| | ) |
| Plaintiff, | ) |
| | )      **CIVIL ACTION** |
| v. | ) |
| | )      **No. 10-2422-KHV** |
| VIOTH INDUSTRIAL SERVICES, INC. f/k/a | ) |
| PREMIER MANUFACTURING SUPPORT | ) |
| SERVICES, INC., | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

### MEMORANDUM AND ORDER

Pro se plaintiff Jerrine Hearron brings suit against Vioth Industrial Services, Inc. f/k/a Premier Manufacturing Support Services, Inc. Plaintiff alleges sex discrimination based on a hostile work environment theory and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. See Pretrial Order (Doc. #38) filed May 9, 2011. Plaintiff contends that defendant sexually harassed her and retaliated for her claim of sexual harassment. Id. at ¶6. Specifically, plaintiff alleges that defendant (1) discriminated because of sex when her supervisor, Jai Scott, was "overly friendly" and flirtatious, "shared his personal business," and once grabbed plaintiff's arm and patted her on the buttocks, stating "you need a spanking and you're gonna like it"; and (2) retaliated by firing her after she reported the harassment.

This matter comes before the Court on Defendant's Motion For Summary Judgment (Doc. #39) filed May 13, 2011. Defendant seeks summary judgment, arguing that (1) plaintiff's sex discrimination claim fails because the conduct about which she complains is not based on sex and is not severe or pervasive and plaintiff did follow defendant's harassment prevention policies or report harassment until her last day of work; and (2) plaintiff's retaliation claim fails

because defendant had a legitimate, nondiscriminatory reason for firing her and no causal nexus exists between the alleged protected conduct and the act of retaliation.

## Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; accord Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248. The inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  Id. at 251-52.

A "genuine" factual dispute requires more than a mere scintilla of evidence.  Id. at 252. The moving party bears the initial burden of showing the absence of any genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Hicks v. City of Watonga, Okla., 942 F.2d 737, 743 (10th Cir. 1991).  Once the moving party meets its burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those "dispositive matters for which [she] carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).  And, while the Court views the record in a light most favorable to the party opposing summary judgment, the nonmoving party may not rest on her pleadings but must set forth specific facts.  Id.  The nonmoving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789,

794 (10th Cir. 1988).   If the nonmoving party's evidence is merely colorable or is not significantly probative, summary judgment may be granted.   <u>Liberty Lobby</u>, 477 U.S. at 250-51.

## Facts

The material facts, with disputes resolved in plaintiff's favor, are as follows.[1]

Defendant provides industrial cleaning services to the General Motors ("GM") assembly facility in Fairfax, Kansas.   Among other things, defendant provides janitorial services in the body shop and cleans the paint shop and process equipment.

In July of 2008, plaintiff began working as a janitorial worker for the subcontractor which then provided janitorial services at the Fairfax plant.   That fall, defendant won the contract for the Fairfax plant and hired plaintiff.   Plaintiff started working for defendant around November 17, 2008.   Her employment included a 90-day probationary period.

In October of 2008, defendant provided plaintiff a copy of its Employee Handbook, which requires employees to submit written reports of harassment.   Plaintiff kept a copy of her handbook in her locker, and acknowledged that she read and understood the Harassment Policy,

---

[1]       In responding to defendant's motion for summary judgment, plaintiff did not comply with D. Kan. Rule 56.1, the local rule which governs summary judgment.   The rule requires a party opposing a motion for summary judgment to begin the opposition with a section that contains a concise statement of material facts as to which the party contends a genuine issue exists, separately numbering by paragraph each fact in dispute, referring with particularity to the portions of the record upon which the opposing party relies, and (if applicable) stating the number of movant's fact that is disputed.   D. Kan. Rule 56.1(b).   All material facts set forth in the movant's statement shall be deemed admitted unless specifically controverted by the opposing party.   D. Kan. Rule 56.1(a).

Plaintiff has partially complied with the rule, in that she identifies by number the facts which she disputes.   With limited exceptions, she does not cite the portion of the record on which she relies.   Despite this, because plaintiff proceeds pro se, the Court has diligently searched plaintiff's brief and attachments to determine whether genuine issues of material fact preclude summary judgment.   See <u>Jackson v. Yellow Logistics, Inc.</u>, 24 F. Supp.2d 1206, 1209 (D. Kan. 1998).   Further, some of defendant's factual statements misrepresent or mischaracterize the portions of the record to which they cite.   The Court therefore disregards those purported facts.

which was in effect throughout plaintiff's employment.  The Harassment Policy provided that harassment victims could confront the harassing person and report the harassment to their immediate manager, facility manager, director of operations or human resources department at 1-800-773-8396.  The policy required that all complaints of harassment ultimately be reported to human resources in writing.  It also stated that "[a]ll reported allegations of harassment, discrimination or retaliation will be investigated promptly and impartially" and that "[e]mployees who report harassment or cooperate in an investigation of a harassment complaint are protected against any form of retaliation and should also report any retaliation."

Jai Scott was plaintiff's direct working supervisor.  Paul Tolsch also supervised plaintiff. Scott and Tolsch no longer work for defendant.

In December of 2008, over the course of 15 days, plaintiff had five unexcused absences from work.  She texted Tolsch to report two of the absences and spoke with Tolsch about two of the absences.

Plaintiff missed work on December 8 due to an alleged illness.  She placed doctors' notes on Tolsch's desk as instructed by a co-worker, but Tolsch did not receive them.  He therefore considered the absence "unexcused" and verbally warned plaintiff about it.  Plaintiff next missed work on December 9 due to an automobile accident.  Scott contacted plaintiff and offered to bring her to work, but plaintiff did not make it in and as a result, she received a written warning.[2] On December 18 and 22, plaintiff missed work because she did not have a ride.  She received a

---

[2]        After her conversation with Scott, plaintiff believed that he needed to confirm with Tolsch that it was okay for Scott to pick her up and that Scott would call her back. Defendant represents that plaintiff did not respond to Scott's offer to pick her up for work. Either way, plaintiff did not make it to work on December 9, 2008.

second written warning for the December 18 absence and a third written warning for the absence of December 22.

Plaintiff next missed work on December 23, 2008 because she did not have a ride and because her throat was sore. Tolsch then spoke with plaintiff by phone and told her that he was imposing a five-day disciplinary suspension and that he would be in contact with human resources regarding whether she would be terminated. During their conversation, plaintiff told Tolsch that Scott had touched her on the butt and that she had called the 800 number two or three weeks ago to report it, though she could not remember the date he touched her. Tolsch then asked plaintiff why she had not reported the incident to him or Bob Machette (the facility manager) and she responded that she did not know Machette and had not seen Tolsch since it happened. In his notice of disciplinary action recounting the conversation, Tolsch disputed plaintiff's account, noting that he had talked to her twice in the past three weeks.

When defendant receives calls and messages about harassment complaints through its "800-number," it forwards them directly to one of two managers. Joan Ward handles the complaints of administrative office staff and Tim Bauer handles the complaints of service workers. Neither Bauer nor Ward received a call, message or written complaint from plaintiff.

Defendant implemented a temporary layoff beginning December 24, 2008, which affected 39 employees at the Fairfax plaint, including plaintiff. Defendant placed plaintiff on temporary layoff before she served her five-day disciplinary suspension.

The automotive industry continued to decline during the temporary layoff period, and defendant decided to implement a permanent reduction in force to eliminate three janitorial positions. One employee resigned during the temporary layoff period. Defendant selected plaintiff and another (male) employee for involuntary layoff because of attendance problems.

On June 29, 2009, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of sex and retaliation for complaining about sexual harassment in violation of Title VII of the Civil Rights Act of 1964 as amended.  On or about July 13, 2009, plaintiff filed a substantially similar charge with the Kansas State Commission on Human Rights ("KCHR").  On May 5, 2010, the EEOC issued a Dismissal and Notice of Rights, which provided that plaintiff could bring suit based on the charge within 90 days of receipt.  On July 28, 2010, plaintiff filed this lawsuit.

<u>Analysis</u>

**I.      <u>Sexual Harassment</u>**

Plaintiff alleges that Scott, her supervisor, was "overly friendly" and flirtatious with her, "shared his personal business" with her, and once grabbed her arm and patted her on the buttocks, stating "you need a spanking and you're gonna like it."  Defendant argues that it is entitled to summary judgment because (1) the alleged harassment was not based on sex and (2) the alleged harassment was not severe or pervasive.  Alternatively, defendant argues that even if plaintiff states a prima facie sexual harassment claim, defendant took reasonable steps to prevent harassment and plaintiff unreasonably failed to take advantage of those procedures, thereby barring her claim.  Because the Court finds that the alleged harassment was not severe or pervasive, it does not reach defendant's other arguments.

Plaintiff may establish a violation of Title VII by proving that discrimination based on sex created a "hostile or abusive work environment."  <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 66 (1986).  To establish a prima facie claim for hostile work environment under Title VII, plaintiff must show (1) that she is a member of a protected class; (2) that the conduct in question was unwelcome; (3) that the harassment was based on sex; (4) that the harassment was

sufficiently severe or pervasive to create an abusive working environment; and (5) a basis for imputing liability to the employer.  Harsco Corp. v. Renner, 475 F.3d 1179, 1186 (10th Cir. 2007); Litton v. Maverick Paper Co., 388 F. Supp.2d 1261, 1284 (D. Kan. 2005).  To prevail under a hostile work environment theory, plaintiff must show that sexually-oriented conduct had the purpose or effect of unreasonably interfering with her work performance or created an intimidating, hostile or offensive working environment.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 753 (1998).  To establish this claim, plaintiff must show both that the conduct to which she was subjected was "severe or pervasive enough to create . . . an environment that a reasonable person would find hostile or abusive," and that she "subjectively perceive[d] the environment to be abusive."  Harris, 510 U.S. at 21.  The existence of such an environment can only be determined by looking at the totality of the circumstances in the workplace, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id.; see also Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).

Additionally, a hostile work environment claim survives summary judgment only when plaintiff presents sufficient evidence indicating that "the workplace [was] permeated with discriminatory intimidation, ridicule, and insult" such that it "create[d] an abusive working environment."  Penry v. Fed. Home Loan Bank, 155 F.3d 1257, 1261 (10th Cir. 1998). In making this determination, courts are to consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Trujillo v. Univ. of Colo. Health Sci. Ctr., 157 F.3d 1211, 1214 (10th Cir.1998).  In order to reach the level of a

hostile work environment, the misconduct must amount to more than "a few isolated incidents"; instead, plaintiff must show "pervasive or severe harassment." Id. (citation omitted).

Here, plaintiff complains that on one occasion, her supervisor patted her buttocks and stated "you need a spanking and you're gonna like it."  She also complains that at some point, he was "overly friendly" and flirtatious and "shared his personal business" with her.[3]  These incidents, even if true, are insufficient to state a legally actionable claim under Title VII.  See Baker v. Via Christi Reg. Med. Ctr., 491 F. Supp.2d 1040, 1051 (D. Kan. 2007) (two unrelated instances where coworkers touched plaintiff's buttocks and patient's genitals in plaintiff's presence insufficient to state sexual harassment claim); Carrasco v. Boeing Co., 190 Fed. Appx. 650, 655 (10th Cir. 2006) (statements by manager who asked if he could measure plaintiff's shorts from inside of her thigh, if she tanned naked, if he could see her thong underwear, and whispered in her ear that he liked her haircut insufficient to demonstrate severe or pervasive harassment); Ford v. West, 222 F.3d 767, 778 (10th Cir. 2000) (in racial harassment context, claim that slurs were used "continuously" without referring to specific dates or circumstances is vague and conclusory and does not create genuine dispute of material fact).  Defendant is therefore entitled to summary judgment on this claim.

## II.    **Retaliation**

Plaintiff contends that after she reported sexual harassment, defendant fired her in retaliation.  Defendant argues that it is entitled to summary judgment because (1) no causal connection exists between the protected activity and the materially adverse action; and (2) plaintiff cannot demonstrate that defendant's decision to fire her was pretextual.

---

[3]    From the record it is impossible to tell whether any conduct about which plaintiff complains occurred after defendant took over the janitorial services contract at the Fairfax plant. See Carrasco v. Boeing Co., 190 Fed. Appx. 650, 655 (10th Cir. 2006).

Title VII forbids employers from discriminating against an employee for opposing an employment practice made unlawful by Title VII.  Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1054 (citing 42 U.S.C. § 20003-3(a)).  To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination; (2) she suffered materially adverse action contemporaneous with or subsequent to such activity; and (3) a causal connection existed between the protected activity and the materially adverse action.  See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1202 (10th Cir. 2006); Knight v. City of Prairie Village, Kan., No. 06-2299-KHV, 2008 WL 474257, at *8 (D. Kan. Feb. 19, 2008).  Unlike in disparate treatment cases, a materially adverse action for purposes of a retaliation claim need not affect the employee's terms and conditions of employment; rather, plaintiff must show that the challenged action could dissuade a reasonable employee from making or supporting a charge of discrimination.  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006).  A causal connection may be shown with evidence of circumstances which justify inference of retaliatory motive, such as protected conduct followed closely by adverse action.  Annett v. Univ. of Kan., 371 F.3d 1233, 1239 (10th Cir. 2004).  Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time.  O'Neal v. Ferguson Constr. Co., 237 F.3d 1248, 1253 (10th Cir. 2001).  Otherwise, "plaintiff must offer additional evidence to establish causation."  Id.  If plaintiff establishes a prima facie case, defendant has the burden to articulate a legitimate, nondiscriminatory reason for adverse action.  Pinkerton, 563 F.3d at 1064.  If the employer does so, the burden shifts back to the plaintiff to show that "the reason given by the employer is mere pretext for the real, discriminatory reason for the adverse action."  Id.

Defendant apparently concedes the first and second elements of a prima facie case, i.e.

that plaintiff engaged in protected opposition to harassment when she complained to Tolsch on December 23, 2008 and that she suffered adverse employment action when defendant terminated her employment in January of 2009.  As to the third element, defendant argues that no causal nexus exists because no member of management knew about her complaints until she accumulated enough absences to qualify her for selection for the reduction-in-force.

The Court disagrees.  The record indicates that on December 23, 2008, plaintiff told Tolsch that Scott had touched her buttocks and that she had called the "800-number" but no one contacted her to follow up.  The next day, defendant implemented a temporary layoff which affected plaintiff along with 38 other employees.  When the layoff ended a month later, plaintiff was one of three employees who was not rehired.  A reasonable jury could infer a causal relationship between plaintiff's protected activity and defendant's decision to terminate her employment at the end of the temporary layoff.

Because plaintiff has established a prima facie case of retaliation, defendant has the burden to articulate a legitimate, nondiscriminatory reason for terminating plaintiff's employment.  Pinkerton, 563 F.3d at 1064.  Defendant states that it implemented a reduction in force because of the auto industry decline, and that it selected plaintiff for this reduction because of her poor attendance.  Excessive absenteeism is a legitimate, nondiscriminatory reason to terminate employment.  Allen v. Sulzer Chemtech USA, Inc., 289 Fed. Appx. 278, 284 (10th Cir. 2008).  Defendant has therefore met its burden.

Because defendant has articulated a legitimate nondiscriminatory reason for terminating plaintiff, the burden shifts back to her to show pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them

unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Id. (quoting Argo, 452 F.3d at 1203). Plaintiff responds that some of her absences should have been excused based on doctors' notes she provided. This does not demonstrate pretext, however, because those absences were deemed unexcused before plaintiff complained about harassment to Tolsch. Plaintiff has not shown that any irregularities in defendant's handling of those absences suggests retaliatory intent. Defendant is therefore entitled to summary judgment on plaintiff's Title VII retaliation claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #39) filed May 13, 2011 be and hereby is **SUSTAINED**.

Dated this 24th day of October, 2011 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge